UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HURTT FABRICATING CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-CV-01405-SPM |
| | ) |
| RN'G CONSTRUCTION, INC., and | ) |
| SPECIALTY SERVICE | ) |
| CONTRACTORS, INC., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter was removed to this Court from the Circuit Court of St. Louis County based on diversity of citizenship pursuant to 28 U.S.C. § 1441, and is currently before the Court, *sua sponte,* to address this Court's concern related to subject matter jurisdiction. At the Court's request, (ECF No. 28), the parties have briefed the issue. (ECF Nos. 29–32, 34). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to pursuant to 28 U.S.C.§ 636(c)(1). ECF No. 27.

I.  **BACKGROUND**

On September 29, 2023, Plaintiff Hurtt Fabricating Corp. filed this breach of contract action in the Circuit Court of St. Louis County, State of Missouri. ECF No. 13 ("Pet'n"). Plaintiff alleges that it is a Missouri corporation, with its principal place of business in Missouri, that is in the business of fabricating sign structures and other materials for use on highway construction projects in Missouri and across the country. It alleges that Defendants RNG Construction, Inc. ("RNG") and Specialty Services Contractors, Inc. ("SSCI") are engaged in the

1

roadway construction business, including as installers of highway signs and other materials on highway construction projects. Plaintiff alleges that it had a written agreement for an ongoing business relationship with each defendant, each with similar terms. Following establishment of each agreement, Plaintiff and each defendant's ongoing business relationship took on a procedure wherein a defendant would request that Plaintiff quote a price for a particular project, Plaintiff would submit a written proposal with a quote or bid, and then the defendant would sign and return the proposal if it wished to accept Plaintiff's terms and contract with Plaintiff as the defendant's supplier on a given project. Under the terms and conditions of the written agreement, each defendant agreed to pay Plaintiff "15 Days after Payment by Owner or 60 Day Net after receipt of Materials." Pet'n ¶ 13. Additionally, "Invoices past 60 days after receipt of materials will be subject to a 1 ½% monthly finance charge." Pet'n ¶ 14.

Plaintiff alleges that several of its proposals were signed and executed by Defendants and that Plaintiff performed in accordance with the terms of each project by supplying the agreed-upon materials. Plaintiff alleges that each defendant breached the agreements and failed to perform by failing to pay Plaintiff within 60 days of receiving the materials supplied and failing to pay finance charges it owed under the terms of the agreement. Plaintiff alleges that Defendant SSCI owes Plaintiff $191,904.71 in finance charges as a result of Defendant SSCI's failure to pay 59 invoices within 60 days of receipt of materials. Pet'n ¶¶ 18-19.  Plaintiff also alleges that Defendant SSCI owes Plaintiff $12,759.42 in unpaid invoices, for which finance charges continue to accrue but were an estimated $11,571.57 as of September 8, 2023. Pet'n ¶¶ 21-22.  In total, Plaintiff alleges Defendant SSCI owes $219,080.68, plus interest, attorneys' fees, and costs allowed under the contract. Pet'n ¶ 43. Plaintiff alleges that Defendant RN'G owes Plaintiff

$53,750.79 in finance charges and $8,024.85 in unpaid invoices, for a total of $61,775.64, plus interest, attorneys' fees, and costs allowed under the contract. *Id.* ¶ 54.

Defendants removed the case to this Court based on diversity of citizenship pursuant to 28 U.S.C. § 1441, asserting that this Court has original jurisdiction based on the parties' diversity of citizenship under 28 U.S.C. § 1332 and an amount in controversy that exceeds $75,000. In the Notice of Removal, Defendants allege that RN'G Construction, Inc., is a Maryland corporation with its principal place of business in Maryland and is therefore a citizen of Maryland; that SSCI is a Maryland corporation with its principal place of business in Maryland and is therefore a citizen of Maryland; and that Plaintiff is a Missouri corporation with its principal place of business in Missouri and is therefore a citizen of Missouri. Defendants point out that Plaintiff seeks well over $200,000 from Defendant SSCI. Defendants also point out that Plaintiff seeks $61,775.64, plus attorneys' fees, costs, and interest from Defendant RN'G.

After removing the case to this Court, Defendants filed a Joint Motion to Transfer to Proper Venue (ECF No. 10) and Plaintiff filed a Motion to Enforce Forum Clause and Remand (ECF No. 22). In its Memorandum and Order addressing these motions the Court requested that the parties file supplemental briefing on two issues the Court had independently identified pertaining to subject matter jurisdiction: first, whether the finance charges sought by Plaintiff constitute "interest" that must be excluded from analysis of whether the claim meets the requisite the amount in controversy for diversity jurisdiction; and second, whether, even if the finance charges are included, the Court has jurisdiction over the claim against RN'G. ECF No. 28. The parties filed their initial briefs on the issues (ECF Nos. 30-31), and their responses to the opposing party's arguments (ECF Nos. 31-32, 34).

3

## II. DISCUSSION

Although the question of this Court's subject matter jurisdiction has not been raised by the parties, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 (2010). Defendants removed this case based on 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants . . . .", and 28 U.S.C. § 1332(a), which provides that the district court has original jurisdiction over civil actions between citizens of different states where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." The diversity of citizenship requirement is satisfied in this case because Plaintiff is a citizen of Missouri and both defendants are citizens of Maryland. However, the Court has concerns regarding the amount in controversy.

The claim against RN'G indisputably fails to reach the requisite amount in controversy for diversity jurisdiction, regardless of whether the finance charges are included or excluded from the calculation. Federal court jurisdiction over this claim would be supplemental, deriving from the claim against SSCI. The Court therefore will first address whether Plaintiff's claim against SSCI meets 28 U.S.C. § 1332(a)'s amount in controversy threshold.

### A. Amount in Controversy

"A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). However, if the Court questions whether the amount in controversy requirement is satisfied, "the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *James Neff Kramper Fam. Farm P'ship v.*

4

*IBP, Inc.*, 393 F.3d 828, 831 (8th Cir. 2005) (internal quotation marks omitted). Under such circumstances, the Court may order the parties to submit supplemental briefing and evidence to address this issue. *See, e.g., K.W. by & through Lane v. State Farm Mut. Auto. Ins. Co.*, No. 4:22-CV-00343-SRC, 2022 WL 1044898, at *1 (E.D. Mo. Apr. 7, 2022) (noting that the court had ordered supplemental briefing after questioning the defendant's allegations regarding the amount in controversy); *Toller v. Sagamore Ins. Co.*, 558 F. Supp. 2d 924, 926 (E.D. Ark. 2008) (noting that the court had requested "summary-judgment-type evidence" and supplemental briefing on the question of the amount in controversy).

In its Order dated May 8, 2024, (ECF No. 28), the Court recognized case law suggesting that charges for late payment, such as the finance charges under the parties' contracts, are considered "interest" under 28 U.S.C. § 1332(a) and must be excluded from the calculation of the jurisdictional amount. *See* 15A Moore's Federal Practice - Civil § 102.106 ("For purposes of calculating the jurisdictional amount, a federal court may not look to any amount claimed as interest by the plaintiff that is attributable solely to a delay in payment or to a wrongful deprivation of funds. This type of moratory interest, if not an essential ingredient of plaintiff's claim, is interest that has accrued before the filing of the complaint and is excluded from calculations of the jurisdictional amount."); Wright & Miller, 14B Fed. Prac. & Proc. Juris. § 3711 (5th ed.) ("[I]nterest uniformly is excluded under the *Brown* [*v. Webster*, 156 U.S. 328 (1895)] rule if it is only incidental to the claim the plaintiff is asserting or if it arises solely by virtue of a delay in the payment of an obligation. Interest is not excluded, however, if it is itself the basis of the suit and part of the obligation. Thus, for example, when the plaintiff is suing to collect on bond coupons, the coupons are part of the matter in controversy and are includible, even though in a sense they represent 'interest.'").

Defendants argue that the finances charges at issue are "contractual interest," which "[c]ourts treat as different" than "pre-judgment or post-judgment interest." Namely, Defendants assert, courts include contractual interest in the calculation of the jurisdictional amount in controversy. ECF No. 29 at 5. Defendants suggest that a contractual provision for interest payments creates a legal obligation to pay that is on equal footing with any other required payment under the contract, and therefore an obligation that is "an integral part of the damages asserted in the case" for jurisdictional purposes. *Id.* In support of their position, Defendants rely primarily on *Brown v. Webster*, 156 U.S. 328 (1895), *Snider v. State Farm Mut. Auto. Ins. Co.*, 360 F.Supp. 929 (S.D.W.Va. 1973), and *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457 (2d Cir. 1994). The Court finds Defendants' arguments unpersuasive and will address each of these cases in turn.

Defendants point to the Supreme Court's recognition of "the elementary distinction between interest as such and the use of an interest calculation as an instrumentality in arriving at the amount of damages to be awarded on the principal demand." *Brown*, 156 U.S. at 329. But they misunderstand this distinction. The plaintiff in *Brown* had purchased land with a warranty deed from the defendant, but a few years later, he was evicted by a third party with superior title to the land. The plaintiff subsequently sued the defendant under a theory of "eviction from the property bought" and sought "the sum of the damage resulting from eviction." *Id.* at 329-30. Notably, under the relevant state law, "damages in such an [eviction] action were return of the purchase price *with interest*." Wright & Miller, 20 Fed. Prac. & Proc. Deskbook § 37 (2d ed.) (emphasis added). The Supreme Court therefore concluded that, although the purchase price on its own was below the amount in controversy threshold, subject matter jurisdiction existed because "the principal claim itself, *at the time it arose*, was made up in part of interest" and

6

interest was accordingly part of the amount in controversy. *Regan v. Marshall*, 309 F.2d 677, 678 (1st Cir. 1962) (citing *Brown*, 156 U.S. 238) (emphasis added); *see also Tri-State Refractories Corp. v. Certified Indus. Techs., Inc.*, 2001 WL 388871, at *3 (S.D. Ind. Mar. 9, 2001) (noting that "[t]o understand the distinction drawn by the *Brown* Court…it is helpful to focus on the unusual feature of the case: the eviction claim had not even arisen until long after the plaintiff had paid the purchase price" and therefore interest had already accrued).

Since *Brown v. Webster*, other courts have elaborated on what kind of interest is part and parcel of the principal, such that it should constitute part of the amount of controversy. For example, interest on investment vehicles such as notes is not interest "arising solely by virtue of delay in payment," but "interest exacted as the agreed upon price for the hire of money" and therefore "not incidental or 'accessory' to the main obligation, but an integral part of the total obligation demanded from defendant by plaintiff." *Brainin v. Melikian*, 396 F.2d 153, 154-56 (3d Cir. 1968); *see also Edwards v. Bates County*, 163 U.S. 269, 271-73 (1896) (holding that bond coupons, though in a sense "interest," are not excluded from the amount in controversy). Likewise, courts have concluded that, should a party sue to recover an unsatisfied legal judgment, the interest included in a legal judgment is "liability imposed by law" and "a part of the total liability on which the action is based," and therefore included in the amount in controversy determination. *Snider v. State Farm Mut. Auto. Ins. Co.*, 360 F. Supp. 929, 931 (S.D.W. Va. 1973) (citing *Brown*, 156 U.S. 328); *see also San Juan Hotel Corp. v. Greenberg*, 502 F. Supp. 34, 35 (E.D.N.Y.), *aff'd*, 646 F.2d 562 (2d Cir. 1980) ("if the judgment in an action provides for interest, the computation of the amount in controversy in a suit on the judgment includes the interest") (citing Wright & Miller, 14B Fed. Prac. & Proc. Juris. § 3712 (5th ed.)).

Defendants' citation to *Snider v. State Farm Mut. Auto Ins. Co.* therefore does little to support their position, for the *Snider* court's analysis distinguished "contractual" liability from "liability imposed by law" and focused specifically on the question of interest deriving from a *legal judgment* mandating its payment.  Even less persuasive is Defendants' reference to *Springstead v. Crawfordsville State Bank*, 231 U.S. 541 (1913).  In *Springstead*, the Supreme Court considered whether an attorney's fee should constitute part of the amount in controversy, noting, "Clearly such fee was no part of the costs, *nor was it interest*."  *Id.* at 542 (emphasis added).  Both cases are therefore inapposite.

A bright line shines through the case law: interest that *results from a delay in payment* is excluded from 28 U.S.C. § 1332(a)'s amount in controversy. *See Regan*, 309 F.2d at 678 ("it makes no difference whether the interest which is sought accumulated upon the principal obligation sued upon because of contract, or by common law, or by statute, or whether the interest be termed a penalty or damages, so long as it is an incident arising solely by virtue of a delay in payment"); *see also Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*, 53 F.4th 361, 367 n. 4 (5th Cir. 2022) ("Indeed, interest uniformly is excluded under the rule of *Brown v. Webster*, if it ... arises solely by virtue of a delay in payment of an obligation.") (internal quotations and citations omitted); *see also State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998) ("[I]nterest is not counted if it was an incident arising solely by virtue of a delay in payment of the underlying amount in controversy") (citing *Brainin*, 396 F.2d at 155) (internal quotations omitted).  For example, in *Principal Mut. Life Insurance. Co. v. Juntunen*, the Seventh Circuit vacated a judgment on the merits because it determined a "fatal defect" that the amount in controversy absent interest was about $50 short of the jurisdictional threshold.  838 F.2d 942, 943-44 (7th Cir. 1988).  The Seventh Circuit explained,"'Interest' for purposes of §

8

1332(a) is a sum that becomes due because of delay in payment," and ruled that the interest at issue—which had accrued on a life insurance policy following the date of the insured's death—should accordingly be excluded from the amount in controversy calculation.  *Id.* (citing *Velez v. Crown Life Insurance Co.*, 599 F.2d 471, 473–74 (1st Cir. 1979)).  The court ordered the case to be dismissed "for want of jurisdiction" and observed that it was "an object lesson in the need to pay attention to the limits of federal jurisdiction." *Id.*

The Second Circuit is the exception to this general approach, and indeed Defendants point to its holding that where "interest is owed as a part of an underlying contractual obligation, unpaid interest becomes part of the principal for jurisdictional purposes." *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994).  But the Second Circuit is a clear outlier in its approach.  *See Grunblatt v. UnumProvident Corp.*, 270 F. Supp. 2d 347, 350 (E.D.N.Y. 2003) (noting "[m]any courts outside this circuit" have excluded interest that "was accruing solely as a penalty for delay in payment," but "as interpreted by the Second Circuit, the interest that contractually accrued under plaintiff's policy is properly calculated as part of the amount in controversy.") (internal quotation marks and citations omitted).

Plaintiff argues:

> The fact that Defendants have let the finance charges accrue has no bearing on the fact that the principal obligation is still the outstanding principal balance. This is not a situation where any money was loaned with the intent of interest becoming part of the principal, where any bonds were purchased with the goal of maturing and adding the interest to the principal value, or even where any insurance policy is at play—that is, this situation does not approach the gray area where the line between principal and interest may become blurred.

9

ECF No. 30 at 5.  The Court agrees.  Under Defendants' reasoning here, the Court would not have had jurisdiction over this dispute when SSCI's payment to Plaintiff was one day late.  However, once enough time had passed without paying Plaintiff and enough interest had accrued such that the principal *and* interest exceeded $75,000, diversity jurisdiction would then become available.  Such reasoning is "directly contrary to the language and purpose of the statute" and case law construing the statute.  *Tri-State Refractories Corp.*, 2001 WL 388871 at *4.  Defendants' attempt to differentiate between interest that continues to accrue and unpaid interest on a *now*-paid principal, while perhaps reasonable, does not accord with the thrust of the statute's limitation as most courts have applied it.  The character of the interest—resulting from a delay in payment—remains the same and the underlying principle still holds. *See Brainin*, 396 F.2d at 155 (Congress excluded interest from the jurisdictional amount in controversy "to prevent the delaying of a suit merely to accumulate the necessary amount for federal jurisdiction"); *see also* Wright & Miller, 14B Fed. Prac. & Proc. Juris. § 3711 (5th ed.) ("The apparent purpose of excluding interest in computing the jurisdictional amount is to prevent the plaintiff from delaying suit until the substantive claim, with accruing interest, exceeds the statutory minimum."); *see also* 15A Moore's Federal Practice - Civil § 102.106  ("[C]ourts often look to whether the interest arose solely because of delay in payment. If so, its inclusion would violate the apparent purpose for excluding interest in computing the jurisdictional amount, to prevent plaintiff from delaying suit until the claim, with accruing interest, exceeds the statutory minimum.").

Courts must strictly construe removal statutes and resolve ambiguities in favor of remand to state court.  *Syngenta Corp. Prot., Inc., v. Henson*, 537 U.S. 28, 32 (2002); *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997); *Frawley v.*

10

*Schutt*, 2020 WL 2043646, at *1 (E.D. Mo. Apr. 28, 2020).  The Court therefore approaches its interpretation of 28 U.S.C. § 1332(a) "mindful that the nature of federal removal jurisdiction—restricting as it does the power of the states to resolve controversies in their own courts—requires strict construction of the legislation permitting removal." *Frawley*, 2020 WL 2043646 at *1 (citing *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002)).  The Second Circuit's interpretation creates ambiguity in the determination of whether the finance charges due to Plaintiff—being as they are a result from delayed payment, only accruing when payment is overdue— constitute "interest" under 28 U.S.C. § 1332(a).  Indeed, "[t]o modern readers, the distinction described in *Brown v. Webster* may seem more subtle than elementary," but maintaining the line most subsequent courts have drawn avoids "effectively eras[ing] the distinction entirely." *Tri-State Refractories Corp.*, 2001 WL 388871 at *2.  Accordingly, the Court finds it appropriate to construe the statute strictly and follow the general, though not absolute, consensus excluding interest from the amount in controversy calculation when such interest is a penalty for delayed payment.

For all the above reasons, the Court finds that the amount in controversy requirement of 28 U.S.C. § 1332(a) is not satisfied and that this Court lacks subject matter jurisdiction over Plaintiff's claim against SSCI.

### B. Supplemental Jurisdiction

Because the Court finds that it lacks jurisdiction over Plaintiff's claim against SSCI, the Court cannot exercise supplemental jurisdiction over RN'G.  That said, the Court finds that supplemental jurisdiction would not have been appropriate over the claim against RN'G even if the finance charges here were included in the amount in controversy.

11

28 U.S.C. § 1367(a) provides that, subject to certain exceptions, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Eighth Circuit has explained that supplemental jurisdiction exists over state law claims where the federal and state claims in the case "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one proceeding." *S. Council of Indus. Workers v. Ford*, 83 F.3d 966, 969 (8th Cir.1996) (internal citation omitted). In determining whether claims share a common nucleus of operative facts, "it is necessary to examine the elements of the parties' causes of action." *Riazi v. Ally Fin., Inc.*, 2017 WL 4260847, at *5 (E.D. Mo. Sept. 26, 2017). "A breach of contract action [under Missouri law] includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Id.* (quoting *Braughton v. Esurance Ins. Co.*, 466 S.W.3d 1, 8 (Mo. Ct. App. 2015) (quoting *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 104 (Mo. 2010) (en banc))).

Here, Plaintiff brings one breach of contract claim against SSCI and one breach of contract claim against RN'G, both claims arising out of allegedly unpaid invoices that have accrued interest. Plaintiff's two contracts with the two defendants have similar terms. However, according to Plaintiff (and Defendants do not dispute), the invoices are from separate and unrelated jobs performed for each Defendant. Neither party suggests that SSCI's invoices, or the underlying jobs, have any connection to those of RN'G. Moreover, although SSCI and RN'G now share a president, the parties do not dispute that the Defendants had separate Presidents at

12

the time they entered into the contracts at issue with Plaintiffs.  Accordingly, the claims at issue involve different alleged breaches at different times by different parties, as well as different acts of performance by Plaintiff.  The relevant facts for Plaintiffs' two breach of contract claims would overlap on only on *one* of the *five* elements: the contractual terms.  The Court is therefore skeptical that there exists a common nucleus of operative facts.

Severance and remand of a claim not within the original or supplemental jurisdiction of the Court is available if the Court is exercising federal question jurisdiction.  *See* 28 U.S.C. § 1441(c).  However, there is no such provision for diversity jurisdiction.  "[T]he Court has no authority under federal law to sever non-removable claims in a diversity action but must instead remand the entire action."  *Colyer v. Leadec Corp.*, 2023 WL 4363896, at *2 (E.D. Mo. July 6, 2023) (quoting *Jackson v. Wal-Mart Stores Tex., LLC*, 925 F. Supp. 2d 810, 814 (N.D. Tex. 2013)) (internal quotation marks omitted).  Consequently, although the Court need not rule on the issue, the Court expects that remand would be appropriate for this action even if the Court had jurisdiction over Plaintiff's claim against SSCI.

### III.   CONCLUSION

For the reasons stated above, the Court lacks subject matter jurisdiction over this case and it will remand this case to state court.  Accordingly,

**IT IS HEREBY ORDERED** that this case is **REMANDED** to the Circuit Court for the Twenty-First Judicial Circuit, St. Louis County, Missouri.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

13

Dated this **19th** day of **November**, **2024**.